### 9853

· STATE v. HOLLIS.

(95 S. E. 74.)

1. CRIMINAL LAW—EVIDENCE—RELEVANCY.—In a prosecution of a woman for killing a man, defendant claiming that she shot in defense against an assault with intent to rape, defendant's testimony as to whether she had ever heard of the man's attempting rape on any other person in the community was incompetent in the absence of showing at what period of time any other alleged assault was made.

2. HOMICIDE—APPEAL—HARMLESS ERROR—EXCLUSION OF EVIDENCE.— The exclusion of such testimony by her was not prejudicial to defendant, where she testified directly to an assault upon her by deceased with intent to rape her.

3. HOMICIDE — INSTRUCTION — "PROVOCATION" AND SELF-DEFENSE — "MANSLAUGHTER."—In prosecution of a woman for manslaughter, she claiming that she killed in defending against an assault with intent to rape, the Court charged that manslaughter is the killing of a person in sudden heat and passion on sufficient legal provocation; that provocation, when it is sufficient and legal, will reduce a homicide from murder to manslaughter, but does not excuse a homicide; that provocation carries with it the idea of some physical aggression or some assault which suddenly arouses heat and passion in the person assaulted, etc. *Held,* that the charge, correct in the usual case of homicide, was also correct, and not misleading, when applied to a case where the defense was killing on account of assault with intent to rape.

4. HOMICIDE—INSTRUCTION—SELF-DEFENSE.—In such prosecution, the charge that defendant must show that "any" person of ordinary prudence and courage would have been warranted in coming to the conclusion that the danger did exist, and that it was necessary to shoot, was not erroneous by the use of "any" person instead of "a" person, as putting on defendant a greater burden than the law required.

5. HOMICIDE—MANSLAUGHTER—SUFFICIENCY OF EVIDENCE.—In prose-
cution of a woman for manslaughter claimed to have been com-
mitted in repelling an assault to rape, evidence *held* to sustain con-
viction.

Before SEASE, J., Union, Fall term, 1917.   Affirmed.

Frances Hollis was convicted of manslaughter, and she
appeals.

The Court's charge to the jury was as follows:

Mr. Foreman and Gentlemen of the Jury: The charge
against this defendant is murder.   That charge also includes
manslaughter.   The defense is self-defense, and also a kill-
ing to prevent the commission of a felony, to wit, assault
with intent to ravish.

The State must prove the guilt of the defendant beyond
a reasonable doubt.   That is a doubt for which you can
given a reason; it is not a flimsy or fanciful doubt, but a
strong substantial doubt.   The defendant, in setting up
her defenses of self-defense, and the other defenses that she
does set up, must show one or the other of them by the
greater weight or the preponderance of the evidence.

You must give the defendant the benefit of every reason-
able doubt that might arise in the consideration of the case.
The presumption is that the defendant is innocent, and that
presumption stays with her throughout the entire trial of
the case until the 12 jurors are satisfied of her guilt beyond
a reasonable doubt.

Where one kills another with a deadly weapon, and noth-
ing else, the law presumes malice.   But wherever the evi-
dence comes out that presumption vanishes, and the State
must prove malice beyond a reasonable doubt.

Murder is the killing of a human being with malice afore-
thought, either express or implied.   The malice need not
have existed in the mind of the person accused of the
homicide for any appreciable or definite period of time.
If it was there at the time, then that would be sufficient
to make the killing murder.   Malice is ill will, and is evi-

denced by threats, old grudges, lying in wait, preparation, previous determination, or anything that would warrant a jury in believing that the act was done wilfully or intentionally without just cause or excuse.

Manslaughter is the killing of a person in sudden heat and passion upon a sufficient legal provocation. Provocation, when it is sufficient and legal, will reduce a homicide from that of murder to manslaughter. It does not excuse a homicide, however great the provocation. That provocation carries with it the idea of some physical aggression or some assault which suddenly arouses heat and passion in the person assaulted, and if the person when assaulted, or some physical aggression is made toward that person, kills another by reason of the sudden heat and passion then and there aroused, but does not kill in self-defense, but kills before cooling time, that would be manslaughter. The law says that the killing would then not be murder, but would be reduced to the lesser grade of homicide, to wit, manslaughter.

Self-defense, gentlemen, is a complete defense to any charge in an indictment for murder, either of murder or manslaughter. I charge you that self-defense is based upon necessity; and the person who sets up the plea of self-defense must satisfy the jury by the preponderance of the evidence that it was necessary or apparently necessary to take the life of an assailant in order to keep himself or herself from being killed or being seriously injured. If she shows that, then she must go further and show that she was without fault in bringing on the difficulty. If she shows that, then she must show that any person of ordinary prudence and courage would have been warranted in coming to the conclusion that the danger did exist and that it was necessary to shoot and strike in order to keep herself from being seriously injured or losing her own life. She must go further, if she has satisfied you of that by the preponderance of the evidence, and show that there was no

other reasonably safe means of escape. But I change the charge on that, gentlemen, and not charge you the last element of self-defense, but there is no evidence to the contrary that she was on her own premises and in her own house; and one being in her own house when she is assaulted need not run, need not get out of the way. She is not called to avoid the necessity by any other means, because she can stand her ground on her own premises and defend herself in going forward. Whether it is necessary to defend herself or not she could not be assumed to have brought on the difficulty, because a person's rights in her own home are higher than anywhere else, and the right of self-defense is not circumscribed and limited by the necessity of getting out of the way when one is on his own premises, because the law attempts to hold the house as the safe place of a person, for the reason that the home and the house is the unit of civilization and is sacred; and, therefore, the law throws around it a higher protection than any other place. So where one is assaulted on his own premises he is not required to get out of the way, but, on the contrary, when one is intruding and is made aware that his presence is no longer wanted, then the owner may put him out by whatever force is necessary, even to the extent of killing him. A person can't kill another because he doesn't get out, but he may use such force as is necessary to put him out, and if it is necessary to kill him, then no liability attaches to the person who kills under such circumstances.

I charge you that any person, whether an officer of the law or not, has a right to kill another in the act of committing a felony, to wit: in the act of burning a house, or in the act of stealing property over the value of twenty dollars, or in the act of committing an assault with intent to rape. Assault with intent to rape is an attempt on the part of a man to have sexual intercouse with a woman without her consent. And it may not be shown that it was any great effort; but just the laying on of hands with

the intention to have carnal intercourse with a woman against her will would be sufficient in law to make an assault with intent to ravish. The intent with which the attempt is made would be the gist of the offense. And if you find that the deceased attempted to commit a rape or ravish this woman, that is to say, to have carnal knowledge with her against her will and by force, she would have a right to take his life if it was necessary to do so to prevent the commission of that felony. And I charge you that it is a hanging crime. The punishment is inflicted where a person commits an assault with intent to ravish a woman. It doesn't say a chaste woman or an unchaste woman, but the word "woman" covers it all. And if a man attempts to commit a rape upon a woman, it makes no difference whether the woman is chaste or unchaste, when a man attempts to commit the assault, to ravish, to have carnal knowlege with her without her consent, and if the jury is convinced beyond a reasonable doubt, he would be guilty and subject to be electrocuted in Columbia in the State penitentiary.

You are to give the defendant the benefit of every reasonable doubt that may arise in the consideration of the case. That is to say, if you have a reasonable doubt as to whether the charge against the defendant is one of murder or manslaughter, one of the two, if you find she is guilty at all, you would give her the benefit of that doubt and write a verdict of the lesser offense. If you have a reasonable doubt as to whether the defendant has made out her plea of self-defense, or either one of her pleas, by the greater weight of the evidence, you would give her the benefit of that, and say that she had made out her plea. That is what I mean when I say you must give her the benefit of every reasonable doubt in the case. If you find that the State has failed to prove that the defendant is guilty of either murder or manslaughter, beyond a reasonable doubt, then, of course, you will find the defendant not guilty.

Where one is found guilty of murder, and nothing more is said, the penalty is death by electrocution. If the jury add the words, for any reason, "with' recommendation to the mercy of the Court," that would mean imprisonment at hard labor for the balance of her natural life. Where one is guilty of manslaughter the punishment is from two to thirty years.

The form of your verdict will be "guilty," or "guilty with recommendation to the mercy of the Court," or "guilty of manslaughter" or "not guilty."

Whatever verdict you find write it out on the back of this indictment and sign your name as foreman. Take the record.

.The following are the exceptions of the defendant-appellant, alleging error:

First Exception: His Honor erred in sustaining the objection of the Solicitor to the following question asked the defendant, and in ruling and holding the same to be incompetent, to wit: "Q. Had you ever heard of his attempting rape on any other woman in the community?" the error being that if the defendant had knowledge of other and similar acts on the part of the deceased, she would be warranted in judging his conduct more harshly and in acting more quickly in defense of her person than otherwise, and, his Honor erred in not so holding and in not allowing her to testify to such knowledge.

Second Exception: His Honor erred in charging the jury in this case with regard to manslaughter, as follows: "Manslaughter is the killing of a person in sudden heat and passion upon a sufficient legal provocation. Provocation, when it is sufficient and legal, will reduce a homicide from that of murder to manslaughter. It does not excuse a homicide, however great the provocation. That provocation carries with it the idea of some physical aggression or some assault which suddenly arouses heat and passion in the person assaulted, and if the person when assaulted, or some physi-

cal aggression is made toward that person, kills another by reason of the sudden heat and passion then and there aroused, but does not kill in self-defense, but kills before cooling time, that would be manslaughter. The law says that the killing would then not be murder, but would be reduced to the lesser grade of homicide, to wit, manslaughter." The error being, it is respectfully submitted, that while this charge is correct in the usual case of homicide, yet, it is misleading and prejudicial when applied to a case where the defense is killing on account of assault with intent to rape.

Third Exception: His Honor erred in charging the jury in this case with regard to self-defense, as follows: "If she shows that, then, she must show that any person of ordinary prudence and courage would have been warranted in coming to the conclusion that the danger did exist and that it was necessary to shoot and strike in order to keep herself from being seriously injured or losing her own life." The error being, it is respectfully submitted, that his Honor placed a greater burden than required by law when he required the defendant to measure up to the standard of "any person of ordinary prudence" in the defense of self-defense—it being submitted that a person is warranted, so far as this element is concerned, in acting in self-defense when a person of ordinary prudence and courage would have been warranted in coming to the conclusion that the danger did exist and that it was necessary to shoot, etc., in order to save himself.

Fourth Exception: His Honor erred in refusing the motion for a new trial on the ground that there was not sufficient evidence to sustain the verdict, it being respectfully submitted, that only the fact of the killing of the deceased at the home of the defendant appearing, it further appearing from the uncontradicted testimony that this killing was made necessary by an attempted rape by the deceased on the defendant—there was no evidence upon which a verdict of

manslaughter could be sustained—and his Honor erred in not so holding.

*Messrs. Wallace & Barron,* for appellant, cite: *As to defendant's right to testify that she had heard of deceased making a similar assault upon another woman in the community:* 12 Rich. 443. *As to law of self-defense:* 13 S. C. 464; 24 S. C. 283; 29 S. C. 34. *As to motion for new trial upon the ground that there was not sufficient evidence to support verdict:* 3 Strob. 358; 4 Strob. 93, 566-9; 73 S. C. 340-354; 72 S. C. 200-1; 6 S. C. 185; 4 Black Com. 201; 15 S. C. 153.

*I. C. Blackwood, Solicitor,* and *John K. Hamblin,* for State-respondent. *Mr. Hamblin* cites: *As to proof of particular acts of violence on part of deceased:* 72 S. C. 74. *As to law of self-defense:* 106 S. C. 438; 66 S. C. 469.

January 17, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The defendant, a negro woman, killed with a shotgun a negro man. She was tried, and the verdict was guilty of manslaughter, judgment was pronounced upon her, and she appeals to this Court.

There are four exceptions; let them be reported, and let the charge be reported.

The Court might have permitted the defendant to answer the question which was propounded to her; but we think the refusal is not sufficient ground to warrant a reversal. The appellant cites and relies upon *State v. Smith,* in 12 Rich. 443. But the appellant's counsel plainly did not by prefatory questions bring the instant case within Smith's case. It does not appear at what period of time the other alleged assault was made; that is to say, whether it was "reasonably connected in point of time with the fatal *rencontre.* Strictly, therefore, the testimony was

30—108.

incompetent. The exclusion, too, was manifestly not hurtful to the defendant. She testified directly to an assault upon her person by the deceased with intent to rape her. If the jury believed her testimony, there was no need to bolster up what she said thereabout by her testimony that the deceased had made an assault of like character upon another woman.

The vital issue was, Did the deceased assault her with unlawful intent? And she testified directly to that event. The State's testimony which tended to discredit her chastity, and, therefore, to suggest her consent, was, we venture to think, the matter which overcame her testimony; it was not the elimination of what she might have said about the conduct of the deceased with other women.

There is no serious argument that the Court misstated the law of self-defense; on the other hand, the appellant's counsel admits that the "charge is correct in the usual case of homicide." It was manifestly correct in the instant case.

The third exception is hypercritical; the Court charged that the accused "must show that *any* person of ordinary prudence and courage would have been warranted in coming to the conclusion that the danger did exist, and that it was necessary to shoot." The italics are supplied.

The literal exception is that the Court should have charged "a person" in the place of "any person." The reason assigned is that the charge thus put upon the defendant a greater burden than the law requires. But that is not true; the qualifying attributes of the hypothetical person are "ordinary prudence and courage;" a defendant in any case is held to measure up to these attributes either as they inhere in a particular person, or as they inhere in an indefinite number of persons; that is to say, in "a person" or in "any person."

The last and fourth exception is without merit. There was sufficient evidence to sustain the verdict of manslaugh-

ter.  The woman, by her account, killed the man; by her account she killed him because he laid his hands on her with an unlawful intent to rape her, against her consent.  But the testimony in its entirety leaves reasonably uncertain whether the assault of the deceased was with intent to rape the defendant, or with intent to have carnal knowledge of her by her own consent thereto.

There was room for the exercise of the jury's judgment about that issue, and the expression of it is final for this Court.

The judgment of the Court is affirmed.  It is so ordered.